# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | |
|---|---|
| JONATHAN BALDOVINOS, HOLLY PINGEL, and ANNTONETTE BARELA, Individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>ADVANCED CALL CENTER TECHNOLOGIES, LLC d/b/a ACT<br><br>*Defendant.* | Civil Action No. _____<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)<br><br>CLASS ACTION PURSUANT TO FED. R. CIV. P. 23 |

## PLAINTIFFS' COLLECTIVE/CLASS ACTION COMPLAINT

Plaintiff Jonathan Baldovinos, Holly Pingel, Anntonette Barela (collectively "Plaintiffs") bring this action individually and on behalf of all current and former hourly call-center employees (hereinafter "Plaintiffs and the Putative Class Members") who worked for Advanced Call Center Technologies, LLC d/b/a ACT (hereinafter "Defendant" or "ACT"), at any time during the relevant statutes of limitation through the final disposition of this matter, to recover compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 206, 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 216(b), The Kansas Wage Payment Act KSA §§ 44-301, *et seq.* ("KWPA" or "Kansas Act"), Utah's Payment of Wages Act, Utah Code Ann. §§ 34-28-1 *et seq.* ("UPWA"), and Texas common law.

Plaintiffs' FLSA claims are asserted as a collective action under Section 16(b) of the FLSA while the KWPA claim, UPWA claim, and the Texas common law claim are asserted as a class actions under Federal Rule of Civil Procedure 23(b)(3).

## I.
## OVERVIEW

1. This is a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, and a class action pursuant to the state laws of the Kansas, Texas, and Utah to recover unpaid wages, overtime wages, and other applicable penalties.

2. Plaintiffs and the Putative Class Members are those similarly situated persons who have worked for ACT in call centers throughout the United States at any time during the relevant statutes of limitation through the final disposition of this matter and have not been paid for all hours worked nor the correct amount of overtime in violation of state and federal law.

3. Specifically, ACT has enforced a uniform company-wide policy wherein it improperly required its hourly call-center employees—Plaintiffs and the Putative Class Members—to perform work off-the-clock and without pay.

4. ACT's company-wide policy has caused Plaintiffs and the Putative Class Members to have hours worked that were not compensated and further created a miscalculation of their regular rate(s) of pay for purposes of calculating their overtime compensation each workweek.

5. Although Plaintiffs and the Putative Class Members have routinely worked in excess of forty (40) hours per workweek, Plaintiffs and the Putative Class Members have not been paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

6. ACT has knowingly and deliberately failed to compensate Plaintiffs and the Putative Class Members for all hours worked each workweek and the proper amount of overtime on a routine and regular basis during the relevant statutes of limitation.

7. Plaintiffs and the Putative Class Members did not (and currently do not) perform work that meets the definition of exempt work under the FLSA or the state laws of Kansas, Texas, or Utah.

8.      Plaintiffs and the Putative Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all damages owed under their respective state-law claims as a class action pursuant to Federal Rule of Civil Procedure 23.

9.      Plaintiffs pray that all similarly situated workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

10.     Plaintiffs also prays that the Rule 23 classed are certified as defined herein, and that Plaintiff Baldovinos, designated herein be named as Class Representative for the Texas Common-Law Class; that Plaintiff Barela, designated herein be named as Class Representative for the Kansas Class; and that Plaintiff Pingel, designated herein be named as Class Representative for the Utah Class.

## II.
## THE PARTIES

11.     Plaintiff Jonathan Baldovinos ("Baldovinos") was employed by ACT during the relevant time periods. Plaintiff Baldovinos did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

12.     Plaintiff Anntonette Barela ("Barela") was employed by ACT during the relevant time periods. Plaintiff Barela did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[2]

---

[1] The written consent of Jonathan Baldovinos is hereby attached as Exhibit "A."

[2] The written consent of Anntonette Barela is hereby attached as Exhibit "B."

13. Plaintiff Holly Pingel ("Pingel") was employed by ACT during the relevant time periods. Plaintiff Pingel did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[3]

14. The Putative Class Members are those current and former hourly call-center employees who were employed by ACT at any time during the last three years through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiffs worked and were paid.

15. Defendant Advanced Call Center Technologies, LLC is a foreign for-profit corporation, licensed to and doing business in Texas, and can be served with process through its registered agent: **CRAIG FORESTER, 606 Morgan Blvd., Harlingen, Texas 78550.**

## III.
## JURISDICTION & VENUE

16. This Court has federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–19.

17. This Court has supplemental jurisdiction over the additional state law claims pursuant to 28 U.S.C. § 1367.

18. This Court has personal jurisdiction over ACT because the cause of action arose within this district as a result of ACT's conduct within this District and Division.

19. Venue is proper in the Southern District of Texas because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

20. Specifically, ACT has maintained a working presence throughout the State of Texas (and the United States), and Plaintiff Baldovinos worked in Harlingen, Texas throughout his employment with ACT, all of which are located within this District and Division.

---

[3] The written consent of Holly Pingel is hereby attached as Exhibit "C."

21. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(b).

## IV.
## ADDITIONAL FACTS

22. ACT is a customer solutions services company, with its headquarters in Berwyn, Pennsylvania.[4] ACT's call centers operate throughout the United States and primarily serve private businesses.

23. Plaintiffs and the Putative Class Members' job duties generally consisted of answering phone calls made by ACT's clients' customers, answering customer inquiries, and generally assisting customers with their inquiries.

24. Plaintiff Baldovinos was employed by ACT in customer service in Harlingen, Texas from approximately May 2018 until January 2019.

25. Plaintiff Barela was employed by ACT in customer service in Junction City, Kansas from approximately June 2016 until March 2018.

26. Plaintiff Pingel was employed by ACT in customer service in Logan, Utah from approximately December 2017 until October 2018.

27. Plaintiffs and the Putative Class Members were (and are) non-exempt call-center employees who were (and are) paid by the hour.

28. Plaintiffs and the Putative Class Members worked approximately forty (40) "on-the-clock" hours per week.

29. In addition to their forty (40) "on-the-clock" hours, Plaintiffs and the Putative Class Members worked up to five hours "off-the-clock" per week and have not been compensated for that time.

---

[4] https://www.acttoday.com/about-act/

30. Plaintiffs and the Putative Class Members have not been compensated for all the hours they worked for ACT as a result of ACT's corporate policy and practice of paying its employees only for their scheduled shifts; that is, requiring its hourly call-center employees to clock-in only when ready to take their first call, at the start of their scheduled shift, and to work after their scheduled shifts had ended.

31. Specifically, Plaintiffs and the Putative Class Members are required to start and log-in to their computer, open multiple different ACT computer programs, log in to each ACT program, and ensure that each ACT program is running correctly—all of which can take up to twenty minutes—before they are able to take their first phone call, which comes in as soon as their official shift starts.

32. In addition, ACT frequently required Plaintiffs and the Putative Class to assist customers after the end of their scheduled shifts, and to remain at their computers during the lengthy shut-down process, activities which were performed after the employees' scheduled shifts had concluded.

33. Plaintiffs and the Putative Class Members were not compensated during their start-up time, although they were expected to have completed this process in advance of their official start time.

34. Plaintiffs were also required to come to work at least forty-five minutes early, one or more times per week, for mandatory team meetings that occurred before their scheduled shift began. The mandatory team meetings would last at least thirty minutes and Plaintiffs were not allowed to clock in prior to the meetings. Plaintiffs could only clock in once the meeting was over, and after they had performed their necessary computer start up tasks, and it was their official shift start time.

35. Nor were Plaintiffs and the Putative Class Members compensated for the time they worked for ACT after their shifts ended although they were required to continue assisting customers or waiting by their computers during the lengthy shut-down process.

36.     ACT required Plaintiffs and the Putative Class Members to be logged on and have all the requisite computer programs running before their first phone call, at the start of their official shift.

37.     ACT also forced Plaintiffs and the Putative Class Members to remain call available until the end of their scheduled shift, at which point they were clocked out despite having to complete their pending call, log out of all open programs, and shut down their computers.

38.     As such, ACT required (and continues to require) Plaintiffs and the Putative Class Members to perform their start-up and shut-down tasks "off-the-clock" (and without pay) before their official shift begins, and after their official shift ends.

39.     As a result of ACT's corporate policy and practice of requiring Plaintiffs and the Putative Class Members to perform these start-up and shut-down tasks while off-the-clock before the beginning of their shifts, and after the ends of their shifts, Plaintiffs and the Putative Class Members were not compensated for all hours worked, including all worked in excess of forty (40) in a workweek at the rates required by the FLSA.

40.     ACT has employed other individuals who perform(ed) the same or similar job duties under the same pay provisions as Plaintiffs.

41.     ACT is aware of its obligation to pay overtime for all hours worked and the proper amount of overtime for all hours worked in excess of forty (40) each week to Plaintiffs and the Putative Class Members, but has failed to do so.

42.     Because ACT did not pay Plaintiffs and the Putative Class Members for all hours worked and time and a half for all hours worked in excess of forty (40) in a workweek, ACT's pay policies and practices violate the FLSA.

43.     Because ACT did not pay Plaintiffs and the Putative Class Members for all hours they worked on behalf of ACT, ACT's pay policies and practices also violates Kansas state law, Texas state law, and Utah state law.

## V.
## CAUSES OF ACTION

### COUNT ONE
### (Collective Action Alleging FLSA Violations)

**A.  FLSA COVERAGE**

44.  All previous paragraphs are incorporated as though fully set forth herein.

45.  The FLSA Collective is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY ADVANCED CALL CENTER TECHNOLOGIES, LLC D/B/A ACT, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM MAY 15, 2016 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("FLSA Collective" or "FLSA Collective Members")**

46.  At all times hereinafter mentioned, ACT has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

47.  At all times hereinafter mentioned, Plaintiffs and the FLSA Collective Members have been employees within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

48.  At all times hereinafter mentioned, ACT has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

49.  During the respective periods of Plaintiffs and the FLSA Collective Members' employment by ACT, these individuals have provided services for ACT that involved interstate commerce for purposes of the FLSA.

50. In performing the operations hereinabove described, Plaintiffs and the FLSA Collective Members have been engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

51. Specifically, Plaintiffs and the FLSA Collective Members are non-exempt hourly call-center employees of ACT who assisted ACT's customers throughout the United States. 29 U.S.C. § 203(j).

52. At all times hereinafter mentioned, Plaintiffs and the FLSA Collective Members have been individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

53. The proposed class of similarly situated employees, i.e. putative class members, sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 45.

54. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of ACT.

**B. FAILURE TO PAY WAGES AND OVERTIME UNDER THE FAIR LABOR STANDARDS ACT**

55. ACT has violated provisions of Sections 6, 7 and 15 of the FLSA, 29 U.S.C. §§ 206–7, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all hours worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

56. Moreover, ACT knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiffs and other similarly situated employees for all hours worked and the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

57. ACT knew or should have known its pay practices were in violation of the FLSA.

58. ACT is a sophisticated party and employer, and therefore knew (or should have known) its pay policies were in violation of the FLSA.

59. Plaintiffs and the FLSA Collective Members, on the other hand, are (and were) unsophisticated employees who trusted ACT to pay them according to the law.

60. The decision and practice by ACT to not pay for all hours worked and the proper amount of overtime for all hours worked over forty (40) each week was neither reasonable nor in good faith.

61. Accordingly, Plaintiffs and the FLSA Collective Members are entitled to be paid for all hours worked and overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

C. **COLLECTIVE ACTION ALLEGATIONS**

62. All previous paragraphs are incorporated as though fully set forth herein.

63. Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of all of ACT's employees who have been similarly situated to Plaintiffs with regard to the work they performed and the manner in which they were paid.

64. Other similarly situated employees of ACT have been victimized by ACT's patterns, practices, and policies, which are in willful violation of the FLSA.

65. The FLSA Collective Members are defined in Paragraph 45.

66. ACT's failure to pay Plaintiffs and the FLSA Collective Members for all hours worked and overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of ACT, and does not depend on the personal circumstances of Plaintiffs or the FLSA Collective Members.

67. Thus, Plaintiffs' experiences are typical of the experiences of the FLSA Collective Members.

68. The specific job titles or precise job requirements of the various FLSA Collective Members do not prevent collective treatment.

69. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be paid for all hours worked and at the proper overtime rate for all hours worked in excess of forty (40) hours per workweek.

70. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

71. Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and ACT will retain the proceeds of its violations.

72. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

73. Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 45 and notice should be promptly sent.

## COUNT TWO
### (Class Action Alleging Violations of the Kansas Wage Protection Act)

A. **KANSAS COVERAGE**

74. All previous paragraphs are incorporated as though fully set forth herein.

75. The Kansas Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY ADVANCED CALL CENTER TECHNOLOGIES, LLC D/B/A ACT IN KANSAS, AT ANY TIME FROM MAY 15, 2016 THROUGH THE FINAL DISPOSITION OF THIS MATTER ("Kansas Class" or "Kansas Class Members").**

76. At all times hereinafter mentioned, ACT has been an employer within the meaning of the KWPA, K.S.A. CODE §§ 33-313(a) and 44-323.

77. At all times hereinafter mentioned, Plaintiff Barela and the Kansas Class Members have been employees within the meaning of the KWPA, K.S.A. § 44-313(b).

**B. FAILURE TO PAY WAGES IN ACCORDANCE WITH THE KANSAS STATUTES**

78. All previous paragraphs are incorporated as though fully set forth herein.

79. ACT owes Plaintiff Barela and the Kansas Class Members wages, as defined in section 44-314 of the KWPA, to compensate them for labor and services they provided to ACT in the furtherance of their job duties. *See* K.S.A. §§ 44-314.

80. Plaintiff Barela and other Kansas Class Members are not exempt from receiving overtime benefits under the KWPA.

81. ACT violated the KWPA through its unlawful withholding of Plaintiff Barela and the Kansas Class Members' straight time and overtime wages in violation of Kansas wage laws. K.S.A. §§ 44-314.

82. Plaintiff Barela and the Kansas Class Members have suffered damages and continue to suffer damages as a result of ACT's acts or omissions as described herein; though ACT is in possession and control of necessary documents and information from which Plaintiff Barela would be able to precisely calculate damages.

83. The KWPA provides that Plaintiff Barela and the Kansas Class Members are entitled to recover treble the amount of the unpaid wages. *See* K.S.A. §§ 44-315.

84. In violating the KWPA, ACT acted willfully, without a good faith basis and with reckless disregard of clearly applicable Kansas law.

85. The proposed class of employees, i.e. Kansas class members sought to be certified pursuant to the KWPA, is defined in Paragraph 75.

86. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of ACT.

**B.     KANSAS CLASS ACTION ALLEGATIONS**

87. Plaintiff Barela brings her KWPA claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by ACT to work in Kansas since May 15, 2016.

88. Class action treatment of Plaintiff Barela's KWPA claim is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

89. The number of Kansas Class Members is so numerous that joinder of all class members is impracticable.

90. Plaintiff Barela is a member of the Kansas Class, her claims are typical of the claims of other Kansas Class Members, and she has no interests that are antagonistic to or in conflict with the interests of other Kansas Class Members.

91. Plaintiff Barela and her counsel will fairly and adequately represent the Kansas Class Members and their interests.

92. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

93. Accordingly, the Kansas Class should be certified as defined in Paragraph 75.

**COUNT THREE**
**(Class Action Alleging Violations of Texas Common Law)**

**A.     VIOLATIONS OF TEXAS COMMON LAW**

94. All previous paragraphs are incorporated as though fully set forth herein.

95. Plaintiff Baldovinos further brings this action pursuant to the equitable theory of *quantum meruit*. *See Artemis Seafood, Inc. v. Butcher's Choice, Inc.* No. CIV. A. 3:98-0282, 1999 WL 608853, at *3 (N.D. Tex. Aug. 11, 1999) (citing *Schuchart & Assocs. V. Solo Serve Corp.*, 1983 WL 1147, at *23 (W.D. Tex. June 29, 1983)).

96. The Texas Common-Law Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY ADVANCED CALL CENTER TECHNOLOGIES, LLC, D/B/A ACT, IN TEXAS, AT ANY TIME FROM MAY 15, 2015 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Texas Common-Law Class" or "Texas Common-Law Class Members").**

97. The Texas Common-Law Class Members are entitled to recover their unpaid "straight time" or "gap time" wages for services rendered on behalf of ACT. These claims are independent of Plaintiff's claims for unpaid overtime wages pursuant to the FLSA, and they are therefore not preempted by the FLSA

98. The Texas Common-Law Class Members provided valuable services for ACT, at ACT's direction and with ACT's acquiescence.

99. ACT accepted the Texas Common-Law Class Members' services and benefited from their timely dedication to ACT's policies and adherence to ACT' schedule.

100. ACT was aware that Plaintiff Baldovinos and the Texas Common-Law Class Members expected to be compensated for the services they provided to ACT.

101. ACT has therefore benefited from services rendered by Plaintiff Baldovinos and the Texas Common-Law Class Members and Plaintiff Baldovinos and the Texas Common-Law Class Members are entitled to recover pursuant to the equitable theory of *quantum meruit*.

**B. TEXAS COMMON-LAW CLASS ALLEGATIONS**

102. Plaintiff Baldovinos brings his Texas Common-Law Claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by ACT to work in Texas since May 15, 2015. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004.

103. Class action treatment of the Texas Common Law Class Members is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

104. The number of Texas Common-Law Class Members is so numerous that joinder of all class members is impracticable.

105. Plaintiff Baldovinos is a member of the Texas Common-Law Class, his claims are typical of the claims of the other Texas Common Law Class Members, and he has no interests that are antagonistic to or in conflict with the interests of the other Texas Common Law Class Members.

106. Plaintiff Baldovinos and his counsel will fairly and adequately represent the Texas Common Law Class Members and their interests.

107. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

108. Accordingly, the Texas Common Law Class should be certified as defined in Paragraph 96.

## COUNT FOUR
### (Class Action Alleging Violations of the Utah Payment of Wages Act)

**C. UTAH COVERAGE**

109. All previous paragraphs are incorporated as though fully set forth herein.

110. The Utah Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY ADVANCED CALL CENTER TECHNOLOGIES, LLC D/B/A ACT IN UTAH, AT ANY TIME FROM MAY 15, 2018 THROUGH THE FINAL**

**DISPOSITION OF THIS MATTER ("Utah Class" or "Utah Class Members").**

111. At all times hereinafter mentioned, ACT has been an employer within the meaning of the UPWA, UTAH CODE ANN. § 34-28-2.

**B.  FAILURE TO PAY WAGES IN ACCORDANCE WITH THE UPWA**

112. All previous paragraphs are incorporated as though fully set forth herein.

113. ACT owes Plaintiff Pingel and the Utah Class Members wages, as defined in section 34-28-3 of the UPWA, to compensate them for labor and services they provided to ACT in the furtherance of their job duties. UTAH CODE ANN. § 34-28-3.

114. ACT violated the UPWA through its unlawful withholding of Plaintiff Pingel and the Utah Class Members' straight time wages in violation of Utah wage laws. UTAH CODE ANN. § 34-28-3.

115. Plaintiff Pingel and the Utah Class may assert a claim under the UPWA without exhausting their administrative remedies because their aggregate claim is for more than $10,000. UTAH CODE ANN. § 34-28-9.5

116. Plaintiff Pingel and the Utah Class Members have suffered damages and continue to suffer damages as a result of ACT's acts or omissions as described herein; though ACT is in possession and control of necessary documents and information from which Plaintiff Pingel would be able to precisely calculate damages.

117. The UPWA provides that Plaintiff Barela and the Utah Class Members are entitled to recover their full unpaid wages and a civil penalty equal to fifty (50%) percent of the unpaid wages. *See* UTAH CODE ANN. § 34-28-9.5(3)(b)

118. In violating the UPWA, ACT acted willfully, without a good faith basis and with reckless disregard of clearly applicable Utah law.

119. The proposed class of employees, i.e. Utah class members sought to be certified pursuant to the UPWA, is defined in Paragraph 110.

120. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of ACT.

**D.  UTAH CLASS ACTION ALLEGATIONS**

121. Plaintiff Pingel brings her UPWA claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by ACT to work in Utah since May 15, 2018.

122. Class action treatment of Plaintiff Pingel's UPWA claim is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

123. The number of Utah Class Members is so numerous that joinder of all class members is impracticable.

124. Plaintiff Pingel is a member of the Utah Class, her claims are typical of the claims of other Utah Class Members, and she has no interests that are antagonistic to or in conflict with the interests of other Utah Class Members.

125. Plaintiff Pingel and her counsel will fairly and adequately represent the Utah Class Members and their interests.

126. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

127. Accordingly, the Utah Class should be certified as defined in Paragraph 110.

## VI.
## RELIEF SOUGHT

128. Plaintiff respectfully prays for judgment against ACT as follows:

  a. For an Order certifying the FLSA Collective as defined in Paragraph 45 and requiring ACT to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

  b. For an Order certifying the Kansas Class as defined in Paragraph 75 and designating Plaintiff Barela as the Class Representative of the Kansas Class;

  c. For an Order certifying the Texas Common-Law Class as defined in Paragraph 96 and designating Plaintiff Baldovinos as the Class Representative of the Texas Common-Law Class;

  d. For an Order certifying the Utah Class as defined in Paragraph 110 and designating Plaintiff Pingel as the Class Representative of the Utah Class;

  e. For an Order approving the form and content of a notice to be sent to all putative FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

  f. For an Order pursuant to Section 16(b) of the FLSA finding ACT liable for unpaid back wages due to Plaintiffs (and those FLSA Collective Members who have joined in the suit), civil penalties, and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those who have joined in the suit);

  g. For an Order pursuant to Kansas Law awarding Plaintiff Barela and the Kansas Class Members unpaid wages and other damages allowed by law;

  h. For an Order pursuant to Texas common law awarding Plaintiff Baldovinos and the Texas Common-Law Class Members unpaid wages and other damages allowed by law;

  i. For an Order pursuant to Utah Law awarding Plaintiff Pingel and the Utah Class Members unpaid wages and other damages allowed by law;

  j. For an Order awarding the costs and expenses of this action;

   k.  For an Order awarding attorneys' fees;

   l.  For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

   m.  For an Order awarding Plaintiff Baldovinos, Barela, and Pingel a service award as permitted by law;

   n.  For an Order compelling the accounting of the books and records of ACT, at ACT's own expense; and

   o.  For an Order granting such other and further relief as may be necessary and appropriate.

Date:   May 15, 2019                              Respectfully submitted,

                                              **ANDERSON ALEXANDER, PLLC**

By:     /s/ *Clif Alexnder*
        **Clif Alexander**
        Federal I.D. No. 1138436
        Texas Bar No. 24064805
        clif@a2xlaw.com
        **Austin W. Anderson**
        Federal I.D. No. 777114
        Texas Bar No. 24045189
        austin@a2xlaw.com
        **Lauren E. Braddy**
        Federal I.D. No. 1122168
        Texas Bar No. 24071993
        lauren@a2xlaw.com
        **Alan Clifton Gordon**
        Federal I.D. No. 19259
        Texas Bar No. 00793838
        cgordon@a2xlaw.com
        **Carter T. Hastings**
        Federal I.D. No. 3101064
        Texas Bar No. 24101879
        carter@a2xlaw.com
        819 N. Upper Broadway
        Corpus Christi, Texas 78401
        Telephone: (361) 452-1279
        Facsimile: (361) 452-1284

        ***Attorneys for Plaintiffs and the Putative Class Members***